UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

KENNETH HAYGOOD,

        Plaintiff,                 **MEMORANDUM & ORDER**
                                                         14-CV-3998 (MKB) (LB)

      v.

LOCAL 1181-1061, AMALGAMATED TRANSIT
UNION, AFL-CIO,

        Defendant.

-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      Plaintiff Kenneth Haygood, proceeding *pro se*, commenced the above-captioned action on May 23, 2014, in the Civil Court of the City of New York, County of Queens, against Defendant Local 1181-1061, Amalgamated Transit Union, AFL-CIO ("Local 1181"), alleging claims arising from Local 1181's representation of Plaintiff. (Notice of Removal, Docket Entry No. 1; Compl., annexed to Notice of Removal as Ex. A.) On June 26, 2014, Local 1181 removed the case to this Court on the basis of federal question jurisdiction. (Notice of Removal.) On March 13, 2015, Plaintiff filed an Amended Complaint, alleging that Local 1181 breached its duty of fair representation under the Labor Management Relations Act, 29 U.S.C. § 141 *et seq.* (the "LMRA").[1] (Am. Compl., Docket Entry No. 9.)

      On August 12, 2015, Local 1181 moved to dismiss Plaintiff's claim as time-barred. (Def. Mot. to Dismiss ("Def. Mot."), Docket Entry No. 20.) On October 6, 2015, the Court referred the motion to Magistrate Judge Lois Bloom for a report and recommendation. (Order dated Oct.

---

[1] As addressed in more detail in Judge Bloom's report and recommendation, the Court identifies this claim by liberally construing Plaintiff's *pro se* allegations.

6, 2015.) By report and recommendation dated February 16, 2016 (the "R&R"), Judge Bloom recommended that the Court grant Local 1181's motion to dismiss because Plaintiff's claim is untimely. (R&R 1, Docket Entry No. 26.) Plaintiff timely filed objections to the R&R. (Pl. Obj. to R&R, Docket Entry No. 27.) On March 15, 2016, Local 1181 filed an opposition to Plaintiff's objections. (Def. Opp'n to Pl. Obj. ("Def. Opp'n"), Docket Entry No. 28.) For the reasons set forth below, the Court adopts in part, and declines to adopt in part, the R&R, and the Court denies Local 1181's motion to dismiss the Amended Complaint.

## I. Background

The facts alleged in the Amended Complaint are assumed to be true for the purposes of this motion. Plaintiff worked as a driver for GVC II from January of 2012 until May of 2013. (Pl. Aff. dated Sept. 10, 2013 ("Sept. 2013 Aff.") ¶¶ 2–3, annexed to Am. Compl.[2]) Plaintiff stopped working for GVC II because he had not been scheduled to work on a full-time, forty-hour per week basis. (*Id.*) A month after Plaintiff stopped working for GVC II, he received a letter from GVC II and called a union representative from Local 1181, Tomas Fret.[3] (*Id.* ¶ 4.) Plaintiff told Fret that Plaintiff "needed to resolve several additional issues with GVC II, including pay [he] was owed . . . [due to] the company's failure to schedule [him] for forty hours per week of work." (*Id.* ¶ 5.) A meeting was scheduled between Plaintiff and

---

[2] Plaintiff includes two "witness affidavits" with the Amended Complaint. These documents were originally included as part of two separate unfair labor practice charges that Plaintiff filed against Local 1181 with the National Labor Relations Board (the "NLRB"). (Sept. 2013 Aff. ¶ 1.)

[3] Plaintiff states that he received this letter "after" he left his job, but elsewhere alleges that his official resignation occurred on a later date. (Sept. 2013 Aff. ¶¶ 6–8.) It appears that Plaintiff may have "left" his job, or taken some sort of unofficial leave of absence, before he officially resigned in May of 2013. The exact date of Plaintiff's departure from his job does not affect the Court's consideration of the timeliness of Plaintiff's claim.

representatives from both Local 1181 and GVC II. (*Id.* ¶ 6.) According to Plaintiff, at the meeting, Local 1181's position "was that [Plaintiff was] owed back pay for the difference between forty hours per week and the hours [he] was actually scheduled to work, if the company [could not] prove that there was a 15% reduction in workload." (*Id.*) Also according to Plaintiff, GVC II "responded that they would look into" Plaintiff's back pay claim. (*Id.*) After the meeting, Plaintiff resigned from his job. (*Id.* ¶ 8.)

Plaintiff spoke to Fret on "about" two occasions after the meeting. (*Id.* ¶ 9.) According to Plaintiff, Fret told him that GVC II wanted "to put a close to [Plaintiff's] claim for back pay," and that a woman, apparently at Local 1181, "had been assigned to gather information and determine whether [Plaintiff was] owed back pay." (*Id.*) Fret also stated that he had meetings scheduled with the owner of GVC II. (*Id.*) Plaintiff further alleges that, three weeks after Plaintiff's meeting with Local 1181 and GVC II, Plaintiff met with Fret in person, and Fret gave Plaintiff a check from GVC II, "for [Plaintiff's] holiday pay and unused time off." (*Id.* ¶ 10.) According to Plaintiff, Fret told him that Local 1181 "was still working on getting [Plaintiff's] back pay for the company's failure to assign [him] forty hours per week." (*Id.*)

Plaintiff filed a charge with the NLRB on September 4, 2013. (*See* NLRB Charge dated Sept. 4, 2013 ("Sept. NLRB Charge"), annexed to Decl. of Edward Pichardo ("Pichardo Decl.") as Ex. A, Docket Entry No. 22.) Plaintiff stated that he had not heard from Fret for six or seven weeks and that, during that time, Plaintiff has tried to reach Fret, on average, three times each week. (Sept. 2013 Aff. ¶ 12.) Plaintiff contended in the NLRB charge that "[s]ince on or about May [of] 2013, [Local 1181] . . . ha[d] failed and refused for reasons that are arbitrary or discriminatory, to represent [Plaintiff] with respect to his grievance" that he was entitled to back pay. (Sept. NLRB Charge 1.)

In response to this NLRB charge, Plaintiff alleges that the NLRB told him that Fret was "supposed to have a meeting with GVC II in late October to resolve [Plaintiff's] grievance regarding" his back pay claim. (Pl. Aff. dated Jan. 7, 2014 ("Jan. 2014 Aff.") ¶ 2, annexed to Am. Compl.) Plaintiff called Fret in either late October or early November of 2013, but his calls were not returned. (*Id.* ¶ 3.) At some point in November of 2013, Plaintiff sent a certified letter to Fret asking for an update regarding his claim for back pay and he received no response from Fret or Local 1181. (*Id.* ¶ 5.)

On December 2, 2013, Plaintiff filed another charge with the NLRB. (*See* NLRB Charge dated Dec. 2, 2013 ("Dec. NLRB Charge"), annexed to Pichardo Decl. as Ex. A.) Plaintiff stated that he had "not heard from anyone at [Local 1181] since the resolution of [his] prior NLRB charge" and that the "last thing [he] heard about the processing of [his] case was from an NLRB agent who had spoken" to counsel for Local 1181. (Jan. 2014 Aff. ¶ 5.) In his December 2, 2013 NLRB charge, Plaintiff asserted that "[s]ince a date within the last six months, [Local 1181] . . . ha[d] failed and refused to process [Plaintiff's] grievance" that he was entitled to back pay. (Dec. NLRB Charge 1.)

**II. Discussion**

    **a. Standards of review**

        **i. Report and recommendation**

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party submits a timely objection to a report and recommendation, the district court reviews the parts of the report and recommendation to which the party objected under a *de novo* standard of review. *Id.*; *see also United States v. Romano*,

794 F.3d 317, 340 (2d Cir. 2015). The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record. *John Hancock Life Ins. Co. v. Neuman*, No. 15-CV-1358, 2015 WL 7459920, at *1 (E.D.N.Y. Nov. 24, 2015). The clearly erroneous standard also applies when a party makes only conclusory or general objections, or simply reiterates its original arguments. *Chime v. Peak Sec. Plus, Inc.*, --- F. Supp. 3d ---, ---, 2015 WL 5773951, at *1 (E.D.N.Y. Sept. 29, 2015) ("General or conclusory objections, or objections which merely recite the same arguments presented to the magistrate judge, are reviewed for clear error." (citation omitted)); *see also DePrima v. City of N.Y. Dep't of Educ.*, No. 12-CV-3626, 2014 WL 1155282, at *3 (E.D.N.Y. Mar. 20, 2014) (collecting cases).

    **ii. Motion to dismiss**

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must "accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)); *see also Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Connecticut v. Am. Elec. Power Co.*, 582 F.3d 309, 320 (2d Cir. 2009)). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson*, 631 F.3d at 63 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717–18 (2d Cir. 2013). Although all allegations

5

contained in the complaint are assumed true, this principle is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."[4] *Iqbal*, 556 U.S. at 678. In reviewing a *pro se* complaint, the court must be mindful that the plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks omitted); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally").

### b. Plaintiff's objections and Local 1181's opposition

Plaintiff objects to Judge Bloom's recommendation that the Court dismiss his LMRA breach of the duty of fair representation claim.[5] (Pl. Obj. to R&R 1.) Plaintiff argues that Judge Bloom erred in finding that his LMRA claim is time-barred because she incorrectly concluded that the claim had accrued by September 4, 2013, when Plaintiff filed an NLRB charge. (*Id.*) Plaintiff argues that, in the summer of 2013, based on Fret's representations to Plaintiff that

---

[4] When deciding a motion to dismiss, a court's review is limited to the four corners of the complaint but a court may also review (1) documents attached to the complaint, (2) any documents incorporated in the complaint by reference, (3) documents deemed integral to the complaint, and (4) public records. *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (documents attached to the complaint, those incorporated by reference, and those integral to the complaint); *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006) (documents integral to the complaint); *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (public records).

[5] In considering Plaintiff's LMRA claim, Judge Bloom construed the Amended Complaint as asserting a claim against Local 1181 for breaching its duty of fair representation pursuant to the LMRA. (R&R 4.) She also found it appropriate to consider various documents outside the allegations in the Amended Complaint. (*Id.* at 5–6.) Plaintiff does not oppose these determinations. The Court has reviewed the unopposed portions of the R&R, and, finding no clear error, the Court adopts: (1) Judge Bloom's decision to construe the claim pled by Plaintiff as a claim for breach of the duty of fair representation pursuant to the LMRA and (2) Judge Bloom's determination that it is appropriate to consider Plaintiff's Witness Affidavits, which are annexed to the Amended Complaint and expressly relied on by Plaintiff, and Plaintiff's NLRB charges, which are public documents.

Local 1181 was "attempting to gather information from [his] prior employer," Plaintiff "understood that [Local 1181] was continuing to pursue [his] claim." (*Id.*) Plaintiff further argues that, at the time he filed the September 3, 2014 NLRB charge, he "continued to believe that [Local 1181] was pursuing [his] claim" and that he filed the action with the NLRB "only to better understand the status of the claim [and] not because [he] believed that [Local 1181] had quit pursuing [his] claim." (*Id.*) Plaintiff argues that his "reasonable belief" was that Local 1181 was continuing to work on his behalf and "had not yet 'failed [him].'" (*Id.*) Plaintiff does not specify when he knew, or should have known, that Local 1181 was no longer pursuing his claim and, consequently, when his claim for Local 1181's breach of the duty of representation accrued.

In response to Plaintiff's opposition to the R&R, Local 1181 argues that Judge Bloom correctly determined that Plaintiff's claim is time-barred. (Def. Opp'n 1.) Local 1181 argues that Plaintiff's opposition is based on allegations that were not included in the Amended Complaint, which Plaintiff is not entitled to rely on in opposing the R&R. (*Id.*) Local 1181 further contends that in his opposition, Plaintiff's arguments contradict his September 4, 2013 NLRB charge. (*Id.* at 2.) Local 1181 also argues that, even crediting Plaintiff's arguments, his claim based on breach of the duty of fair representation still accrued before November 23, 2013 because Plaintiff knew or should have known that Local 1181 was not pursuing his grievance by "late October or early November [of] 2013," when Plaintiff "resumed repeatedly attempting to contact Local 1181, without response." (*Id.*)

### c. LMRA fair representation claim

Local 1181 moves to dismiss Plaintiff's LMRA claim for Local 1181's alleged breach of the duty of fair representation as time-barred. (Mem. of Law in Supp. of Def. Mot. ("Def. Mem.") 2–5, Docket Entry No. 21.)

"An employee's claim against a union for breaching its duty of fair representation is a cause of action 'implied under the scheme' of the National Labor Relations Act." *Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc.*, 742 F.3d 42, 46 (2d Cir. 2014) (quoting *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 & n.14 (1983)); *see Carrion v. Enter. Ass'n, Metal Trades Branch Local Union 638*, 227 F.3d 29, 33 (2d Cir. 2000) ("The Union's duty of fair representation . . . is implied under the scheme of the NLRA." (citing *DelCostello*, 462 U.S. at 164 & n.14)). An employee has six months to assert a claim against his union for breach of the collective bargaining agreement or breach of the duty of fair representation. *DelCostello*, 462 U.S. at 171–72; *Kalyanaram*, 742 F.3d at 46 ("It is undisputed that the limitations period for filing such a claim in the district court is borrowed from section 10(b) of the NLRA, 29 U.S.C. § 160(b), which provides for a six-month limitations period." (citing *DelCostello*, 462 U.S. at 169)).

Judge Bloom determined, and Plaintiff does not dispute, that the six-month limitations period governs Plaintiff's LMRA claim. (R&R 6.) Therefore, the timeliness of Plaintiff's claim depends on when Plaintiff's claim for breach of the duty of fair representation accrued.

i. **Accrual of LMRA claim**

Local 1181 argues that Plaintiff's claim accrued by September of 2013, when Plaintiff filed a charge with the NLRB. (Def. Mem. 2–5.) Local 1181 contends that Plaintiff's September 4, 2013 charge accuses Local 1181 of failing to represent Plaintiff, and because Plaintiff's LMRA claim is based on the same conduct, Plaintiff knew or should have known that Local 1181 breached its duty of representation upon filing of that charge with the NLRB. (*Id.*) Because September 4, 2013 is more than six months prior to the commencement of this action, if

8

Plaintiff's claim did accrue when Plaintiff filed that charge with the NLRB, Plaintiff's claim would be untimely.

"In this circuit, it is well settled that the cause of action accrues no later than the time when plaintiffs *knew* or reasonably *should have known* that such a breach of the duty of fair representation had occurred, even if some possibility of nonjudicial enforcement remained." *Kalyanaram*, 742 F.3d at 46 (internal quotation marks and citation omitted); *see Scerba v. Allied Pilots Ass'n*, 589 F. App'x 554, 556 (2d Cir. 2014) ("A duty of fair representation claim . . . accrues no later than the time when plaintiffs knew or reasonably should have known that such a breach of the duty of fair representation had occurred, even if some possibility of nonjudicial enforcement remained." (internal quotation marks and alteration omitted) (citing *Cohen v. Flushing Hosp. & Med. Ctr.*, 68 F.3d 64, 67 (2d Cir. 1995))), *cert. denied* 562 U.S ---, ---, 135 S. Ct. 2313 (2015).

Where an employee asserts than a union failed to pursue his grievance, the employee's knowledge that the union has "done nothing" to pursue the grievance is "sufficient to start the statute of limitations running," although "pinpointing an accrual date can be difficult when a union has been less than cooperative." *Cohen*, 68 F.3d at 68; *see Urena v. Am. Airlines, Inc.*, 152 F. App'x 63, 65 (2d Cir. 2005) ("Because the [union's] alleged breach was grounded in its failure to pursue a grievance, [the plaintiff's] claim accrued when he had notice that the union was not going to take action."); *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 165 (2d Cir. 1989) ("Where a union refuses or neglects to assist a union member . . . a breach of duty by the union is apparent to the member at the time she learns of the union action or inaction about which she complains."). If the accrual of such a claim depends on the timing of a failure or breakdown of communication between the employee and the union, courts have focused on when

the employee should reasonably have understood that the union was not pursuing the grievance. *See, e.g.*, *Glozman v. Retail, Wholesale & Chain Store Food Emps. Union, Local 338*, 204 F. Supp. 2d 615, 628 (S.D.N.Y. 2002) ("[The plaintiff] asserts that he attempted to contact [his union representative] between five to ten times in the three months following his termination . . . and that not one of these phone calls was returned. Assuming the truth of these assertions, in the exercise of reasonable diligence, [the] plaintiff should have discovered before [three months had passed] that [the union] was not going to pursue a grievance on his behalf."); *Perkins v. 199 SEIU United Healthcare Workers E.*, 73 F. Supp. 3d 278, 289 (S.D.N.Y. 2014) ("After several days or a week of silence, Perkins could reasonably infer only that his grievance was not being pursued . . . .").

In *Cohen*, the plaintiff was absent from work for two months, initially on sick leave, and the employer informed the plaintiff that it assumed he had resigned. *Cohen*, 68 F.3d at 66. The plaintiff sent the employer a letter, which he forwarded to his union, denying that he had resigned. *Id*. The plaintiff also sent a letter to a third party organization, in which he stated that he had "been terminated 'without the union so much as lifting a single finger in my defense, up to an including this day.'" *Id*. at 68. The Second Circuit held that the plaintiff employee's claim accrued at the time of his second letter, which made clear that the plaintiff was "well aware of the [u]nion's failure to take action on his termination." *Id*. The court explained that "[e]ven if the [plaintiff] entertained hopes of future representation," he knew at the time of that letter that the union "had done nothing . . . to pursue his grievance," which was "sufficient to start the statute of limitations running." *Id*. The court further explained that because the plaintiff had failed to seek representation through the proscribed grievance process or contact the union about his termination directly, the union's "lack of response did not extend the accrual date." *Id*.

Judge Bloom concluded that Plaintiff's claim is untimely because she determined that, based on the facts alleged in Plaintiff's September of 2013 NLRB charge, Plaintiff knew or reasonably should have known "by the summer of 2013" that Local 1181 was no longer pursuing his claim for back pay, as Fret, Local 1181's representative, had ceased responding to his telephone calls. (R&R 7.) Judge Bloom further found that Plaintiff had "actual knowledge [that Local 1181] was no longer pursuing his claim by September 4, 2013," when he filed the charge with the NLRB. (*Id*.) Plaintiff argues that the R&R incorrectly determined that he knew or should have known that Local 1181 breached its duty of fair representation as of the summer of 2013 because, at the time of his September 4, 2013 NLRB charge, Plaintiff still believed that Local 1181 was investigating his claim. (Pl. Obj. 2.) The Court first considers whether Plaintiff has plausibly alleged that he did not have actual knowledge of Local 1181's breach at the time of the September 4, 2013 NLRB charge, and then considers when Plaintiff knew or should have known of a breach.

### 1. Plaintiff has plausibly alleged that he did not have actual knowledge of Local 1181's breach upon filing the September 4, 2013 NLRB charge

As Judge Bloom explained, where a plaintiff has filed a charge with the NLRB alleging the same misconduct that is pled in a subsequent complaint, the filing of that NLRB charge can establish that the plaintiff had actual knowledge of the breach. *See Kavowras v. N.Y. Times*, 328 F.3d 50, 55 (2d Cir. 2003) ("In his NLRB charge, [the plaintiff] alleged in a general manner the same misconduct by the [u]nion which he charged in his complaint. His bringing of the NLRB charge establishes that he had actual knowledge of the breach . . . ."); *see also Howell v. Vazquez*, --- F. App'x ---, ---, 2016 WL 1055726, at *1 (2d Cir. Mar. 17, 2016) ("Howell filed a charge . . . with the [NLRB], challenging the [u]nion's decision not to arbitrate, nine months before he filed the complaint. Accordingly, his claim had accrued by that time because he knew

11

of the alleged breach."); *Ode v. Terence Cardinal Cooke (HCC)*, No. 08-CV-1528, 2008 WL 5262421, at *2 (S.D.N.Y. Dec. 12, 2008) (finding a claim for breach of the duty of fair representation based on union's refusal to demand arbitration on the employee's behalf time-barred because the claim accrued when the employee filed an NLRB charge). In *Kavowras*, the plaintiff complained of the union's failure to adequately represent him at an arbitration hearing. *Kavowras*, 328 F.3d at 55 (explaining that the complaint alleged the plaintiff's union breached its duty at an arbitration session "by failing to investigate or present evidence on [the plaintiff's] behalf and by attempting to persuade him to accept an 'unconscionable' settlement").

The allegations in Plaintiff's September 4, 2013 NLRB charge are insufficient to establish that Plaintiff knew that Local 1181 was not pursuing his back pay claim because Local 1181's conduct, as alleged by Plaintiff in the charge, could have led Plaintiff to reasonably believe that Local 1181 was still pursuing his claim. Plaintiff has identified actions by, and communications from, Local 1181 that he could reasonably have understood as actions taken in furtherance of his claim for back pay. In the September 4, 2013 NRLB charge, Plaintiff states that he notified Local 1181 that he was interested in pursuing the "pay [he] was owed . . . [due to] the company's failure to schedule [him] for forty hours per week of work," (Sept. 2013 Aff. ¶ 5), and that Local 1181 arranged a meeting between Plaintiff and representatives for Local 1181 and GVC II, (*id.* ¶ 6). At that meeting, Local 1181 asserted that Plaintiff had a valid claim for back pay based on the difference between his actual hours and a forty hour work week, provided that the company could not prove a 15% reduction in GVC II's workload. (*Id.*)

Before the filing of Plaintiff's September of 2013 NLRB charge, Plaintiff also had multiple communications with Local 1181's representative, Fret, which Plaintiff reasonably could have understood as indicating that Fret was pursuing his back pay claim. Plaintiff states

12

that he and Fret had an initial communication before the meeting with Local 1181 and GVC II, and at least two subsequent conversations after the meeting. (*Id.* ¶¶ 5, 9.) Fret appears to have communicated with GVC II on Plaintiff's behalf, as Fret represented to Plaintiff that the company sought to "put a close to [Plaintiff's] claim for back pay" and Fret indicated that he had scheduled a meeting with the company's owner. (*Id.* ¶ 9.) Fret also told Plaintiff that someone in the union was investigating Plaintiff's claim. (*Id.*) In addition, Fret successfully resolved other outstanding issues between Plaintiff and GVC II and obtained checks for Plaintiff's holiday pay and unused time off. (*Id.* ¶ 10.) Moreover, during an in-person conversation, which appears to have occurred early in the summer of 2013, Fret specifically stated that he was still pursuing Plaintiff's back pay claim. (*Id.*)

Although, at the time Plaintiff filed his NLRB charge on September 4, 2013, Plaintiff stated that Fret had not responded to Plaintiff's communications in six or seven weeks, (*id.* ¶ 12), it appears that during the final communication between Plaintiff and Fret, Fret indicated that he was still pursuing Plaintiff's back pay claim, (*id.* ¶ 10). Unlike *Kavowras*, where the plaintiff's knowledge of the breach was clear because the plaintiff's NLRB charge referenced the conduct constituting the breach, here, Fret's communications suggesting that he was pursuing the back pay claim combined with his failure to convey to Plaintiff that Local 1181 was no longer pursuing the claim created ambiguity as to the timing of the breach. Moreover, in his September 4, 2013 NLRB charge, Plaintiff did not state that he believed that Local 1181 had abandoned his representation. (Sept. NLRB Charge 1.) Rather, the September 4, 2013 NLRB charge asserted that Local 1181's "fail[ure] and refus[al]" to represent Plaintiff in pursuing his back pay grievance had begun in May of 2013. (Sept. NLRB Charge 1.) Given Plaintiff's extensive allegations as to Fret's and Local 1181's pursuit of his claim, the Court understands

13

Plaintiff to argue that, as of September of 2013, Local 1181 had not yet achieved the outcome Plaintiff sought, not that Local 1181 had taken no actions to represent him. As such, Plaintiff's September 4, 2013 NLRB charge does not establish that Plaintiff had "actual knowledge" that Local 1181 breached its duty of fair representation by failing to pursue Plaintiff's back pay claim. *See Kavowras*, 328 F.3d. at 55.

### 2. Plaintiff knew or should have known of the breach at the time of his November of 2013 letter

Liberally construing Plaintiff's allegations, Plaintiff knew or should have known that Local 1181 was no longer pursuing his claim for back pay in November of 2013, when he sent a letter to Local 1181 inquiring about representation on his back pay claim and he received no response. As in *Cohen*, the issue here is the date by which Plaintiff should reasonably have known that his union was not representing him. *Cohen*, 68 F.3d at 68. However, in *Cohen*, the plaintiff asserted that the union had failed entirely to represent him in challenging his termination. *Id.* at 66. Local 1181's alleged handling of Plaintiff's claim is not analogous to that of unions that have "done nothing" to pursue a claim by an employee. *See id.* at 68. Instead, Plaintiff's claim accrued when he knew or should have known that Local 1181 had, after taking actions on behalf of Plaintiff, *ceased* its efforts to pursue his claim for back pay.

Plaintiff has alleged sufficient facts to demonstrate ongoing ambiguity after the September 4, 2013 NLRB charge about the involvement of Local 1181 in the resolution of Plaintiff's back pay claim. In particular, Plaintiff alleges that he was told by the NLRB that Fret was to meet with GVC II in late October of 2013, to resolve the claim, and that he withdrew the September 4, 2013 NLRB charge pending this meeting. (Jan. 2014 Aff. ¶¶ 2, 5.) However, Plaintiff also states that he had no communication with Local 1181 during the fall of 2013. (*Id.* ¶ 5.) In both late October and early November of 2013, Plaintiff attempted to contact Fret, but

14

his calls went unreturned. (*Id*. ¶ 3.) At some point during November of 2013, Plaintiff sent a certified letter to Fret and asked for an update regarding his claim for back pay. (*Id*. ¶ 5.) When Plaintiff received no response from Fret or Local 1181, he had unambiguous "notice that the union was not going to take action." *See Urena*, 152 F. App'x at 65. Thus, in November of 2013, Plaintiff knew or should have known that Local 1181 was no longer pursing his claim for back pay, the conduct underlying his claim for breach of Local 1181's duty of fair representation, and Plaintiff's LMRA claim for breach of the duty of fair representation had accrued.

Crediting Plaintiff's allegations and drawing all reasonable inferences in Plaintiff's favor, the Court cannot determine that Plaintiff's claim is time-barred. In order for Plaintiff's claim to be timely, it must have accrued on or after November 23, 2013, six months before the commencement of this action on May 23, 2014. Plaintiff alleges that he mailed the November 2013 letter to Local 1181 by certified mail and never received a response. (Jan. 2014 Aff. ¶ 5.) At this point, Plaintiff knew or should have known that Local 1181 was no longer pursuing his claim. Depending on when during November of 2013 Plaintiff wrote to Local 1181, Plaintiff's claim could be timely. "An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998); *see also Frankel v. Cole*, 313 F. App'x 418, 420 (2d Cir. 2009) (vacating a motion to dismiss a RICO claim as time-barred because it was "it is not clear from the face of the complaint" when the relevant injuries were sustained or discovered); *Shmueli v. City of New York*, 424 F.3d 231, 236 (2d Cir. 2005) (explaining that absolute immunity, as an affirmative defense, may be "resolved as a matter of law on a motion to dismiss the complaint pursuant to

Rule 12(b)(6)" where the grounds are "clear from the face of the complaint"). Because it is not clear from the Amended Complaint that Plaintiff's claim accrued before November 23, 2013, the Court cannot conclude that the Amended Complaint is untimely. Local 1181's motion to dismiss Plaintiff's claim as time-barred is therefore denied.

## III. Conclusion

For the reasons stated above, the Court accepts in part and declines to accept in part Judge Bloom's R&R. The Court accepts the portion of the R&R that construed Plaintiff's claim as an LMRA claim for breach of the duty of fair representation. The Court declines to adopt Judge Bloom's recommendation that the Court dismiss Plaintiff's claim as time-barred. The Court denies Local 1181's motion to dismiss.

SO ORDERED:

    s/ MKB
MARGO K. BRODIE
United States District Judge

Dated: March 29, 2016
      Brooklyn, New York